**Wilbur T. JOHNSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 9330.**

District of Columbia Court of Appeals.

Submitted Oct. 21, 1975.

Decided Jan. 22, 1976.

---

James E. Drew, Washington, D. C., appointed by this court, for appellant.

Earl J. Silbert, U. S. Atty., and John A. Terry, James F. McMullin, Robert M. McNamara, Jr., Richard H. Saltsman, Jonathan B. Marks and Bernard J. Panetta, II, Asst. U. S. Attys., for appellee.

Before REILLY, Chief Judge, and KELLY and NEBEKER, Associate Judges.

NEBEKER, Associate Judge:

This appeal presents the question whether there is record support for a holding that a police officer's protective reaction and search were lawful. The trial court held that for his own safety the arresting officer was warranted in examining the contents of a grocery bag accessible to the driver of a car stopped for a traffic violation. We find testimonial and legal support for the ruling denying suppression of the recovered contraband (marijuana), and we affirm.

### The Undisputed Facts

The accused was stopped at night for driving through a red traffic light. He was in an area of the city which has been known to have a high narcotics crime rate. See Vicks v. United States, D.C.App., 310 A.2d 247 (1973); Munn v. United States, D.C.App., 283 A.2d 28, 29 (1971); Peterkin v. United States, D.C.App., 281 A.2d 567 (1971); Dorsey v. United States, 125 U.S.App.D.C. 355, 356, 372 F.2d 928, 929 (1967); Freeman v. United States, 116 U. S.App.D.C. 213, 214, 322 F.2d 426, 427 (1963). As the officer, with four and one-half years' experience, was preparing to examine the accused's driving credentials, he flashed his light into the car and saw a closed, partially filled grocery-type bag on the floor between the driver's legs. He feared for his safety, as he expressed it, because "I have made arrests for finding weapons in bags before." The last arrest he made had been an occasion when a gun was found "in a bag on the floor." A subsequent examination of the bag in the instant case disclosed plastic bags containing marijuana.

### The Disputed Facts

The officer testified that the accused leaned forward toward the steering wheel,

his back away from the seat backrest, and reached toward the bag which was partially rolled at the top. "[H]e was attempting to put his hands inside the bag—his hands were on top of the bag ready—getting ready to go inside." As his hands went into the bag, the officer opened the car door, "grabbed his wrists and pulled his hand out of the bag. * * * Because that had created a tear in the bag," he shined his light into it [1] and saw a quantity of what appeared to him to be marijuana.

The accused testified that as he was reaching into the glove compartment for his credentials, the officer asked what was in the bag and, when he did not answer, he was ordered from the car. The officer seized the bag, opened it, and saw its contraband contents.

### The Trial Court's Ruling

[W]hether you accept the testimony of the officer or the Defendant, . . . seeing a bag in that spot, in an automobile under these circumstances, warranted the officer in taking precautionary steps, whether there was some movement towards it or whether there wasn't, and his actions in grabbing for the wrist of the Defendant, rather than the bag, in the Court's mind bears out his concern for a weapon rather than any contraband drugs, so that I feel that the actions of the police officer were warranted under the circumstances.

### Discussion and Decision

 Although the accused argues that essential facts·were not resolved,[2] we view the rationale and expressed findings of the trial court judge as resolving sufficient facts in favor of the prosecution to form a basis to sustain his ruling. *See* D.C.Code 1973, § 17–305. The issue is whether the

trial court found facts sufficient to hold that the officer reasonably considered his safety in jeopardy. In answering that question, we, as well as the trial court, must view the situation and the action taken objectively but from the vantage point of the particular knowledge or experience of the arresting officer. *See Terry v. Ohio,* 392 U.S. 1, 21–22, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Curtis v. United States,* D.C.App., 349 A.2d 469 (1975). *See also United States v. Green,* 151 U.S. App.D.C. 35, 38–39, 465 F.2d 620, 623–24 (1972). This judgment is a particularly delicate one. On the one hand Fourth Amendment rights of individuals stopped by the police are at issue; on the other hand, courts as remote as they are from such street encounters are in a poor position to judge whether a given situation gave rise to physical danger. Great deference must be given to the tactical judgments made at the time, *Bailey v. United States,* D.C.App., 279 A.2d 508, 510 (1971), and only compelling reasons of record, and not speculation or remote independent judgment should form the basis for ruling that such an action did not comport with constitutional standards. *See Terry v. Ohio, supra,* 392 U.S. at 21–22, 88 S.Ct. 1868; *United States v. Green, supra,* 151 U.S.App.D.C. at 38, 465 F.2d at 623. "The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." *Warden, Maryland Penitentiary v. Hayden,* 387 U.S. 294, 298–99, 87 S.Ct. 1642, 1646, 18 L.Ed.2d 782 (1967). Indeed, in matters of a particular officer's safety, the exclusionary rule is least likely to exert any deterrence against future action. If an officer is in fear for ᴴhis own or another's safety, he can hardly be expected to choose to increase risk of death or injury simply to seize admissible evidence. Our task is more to guard against

---

1. *See Dorsey v. United States, supra.*

2. If that were true, we would remand for a more detailed finding. *See* D.C.Code 1973, § 17–306.

the use of "fear" as a sham for intrusion. Once a claim is made that an officer reacted out of a need to take protective action, the role of the courts is to ensure that the claim is objectively credible and reasonable when viewed through the officer's eyes and that it is not an afterthought to justify his actions.[3] The standard is articulated in *Young v. United States*, 140 U.S.App.D.C. 333, 337, 435 F.2d 405, 409 (1970). An officer "need not defer such protective measures to the point of peril. All the law requires is that he have reasonable basis for believing that his safety or the safety of others requires a search or seizure." *See also United States v. Coates*, 161 U.S.App. D.C. 334, 339, 495 F.2d 160, 165 (1974); *United States v. Green, supra* at 38–39, 465 F.2d at 623–24. So long as there is record support leading to a conclusion that the police took reasonable protective action, a court should not say that such action is unconstitutional. *See Terry v. Ohio, supra* 392 U.S. at 21, 88 S.Ct. 1868.

Appellant relies on *United States v. Page*, D.C.App., 298 A.2d 233 (1972), and *Watts v. United States*, D.C.App., 297 A.2d 790 (1972). A review of those cases does not dissuade us from our holding. In *Page*, the car in which defendant was riding was stopped for a speeding violation. He was a passenger in the rear seat of the vehicle and he moved so as to make the arresting officer think that he was hiding something. The officer ordered the ·defendant out of the car and a search revealed a pistol and heroin. Before being ordered out, the accused posed no threat because his hands were on his lap. *United States v. Page, supra*, 298 A.2d at 234, 236. Moreover, the incident in *Page* occurred during the afternoon·rush hour and therefore did not present a nighttime search in a high crime area. In *Watts*, the defendant was stopped for erratic driving. The officers observed him bending over inside the car and making movements near the dashboard. Defendant got out of the car and locked the vehicle. After several requests, the defendant reluctantly allowed the police to open and search the car and in turn, discover a pistol. Unlike the present case there was no justification based on the need for protection of the officer. Similarly, *Tyler·v. United States*, D.C.App., 302 A.2d 748, 752 (1973), is also inapposite since the police activity (a car search while the driver was out of it talking to another officer) was not "reasonably related to the protection of the officers."

■ The record support for the conclusion that the particular action of this arresting officer was reasonably related to protection is as follows:

(1) The officer lawfully stopped the accused for a traffic violation.

(2) He was in a high crime area at night.

(3) He saw a partially filled bag large enough to hold a weapon between the legs of the accused.

(4) The trial judge specifically believed that the officer grabbed the accused's wrists as he reached into the bag. (The accused's testimony was totally inconsistent with what the trial court specifically found as fact and we thus read the record in the light that the accused was disbelieved on the important aspects of his testimony.)

(5) On previous occasions, such a situation had proved hazardous to the officer since guns had been found under similar circumstances of accessibility in the recent past. *See Terry v. Ohio, supra; Lucas v.*

---

3. "Courts must be careful not to use hindsight in limiting the ability of police officers to protect themselves as they carry out missions which routinely incorporate danger." *United States v. Coates*, 161 U.S.App.D.C. 334, 339, 495 F.2d 160, 165 (1974) (footnote omitted). *See also Bailey v. United States*, 128 U.S.App.D.C. 354, 364, 389 F.2d 305, 315 (1967) (Leventhal, J., concurring).

*United States,* D.C.App., 256 A.2d 574 (1969).

(6) The scope of the initial and critical intrusion was limited to an examination of the very object of hazardous concern.[4] *Terry v. Ohio, supra* 392 U.S. at 19–20, 88 S.Ct. 1868.

In light of the foregoing, we hold that the record supports the finding that the officer reasonably reacted to the situation confronting him. The judgment of conviction is

*Affirmed.*

KELLY, *Associate Judge,* concurs in the result.

4. The police action in the case at bar was within the permissible limits of *Bailey v. United States, supra* (279 A.2d) at 510.